UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO.

NE 32ND STREET, LLC, as agent for
The Frank Sawyer Revocable Trust,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

_____/

## **COMPLAINT**

Plaintiff, NE 32nd Street LLC ("Plaintiff"), as agent for the Frank Sawyer Revocable Trust ("Sawyer"), files its Complaint against the United States of America ("United States") and alleges:

## **JURISDICTION AND VENUE**

1.      This action relates to quieting title to property ("MSA 686" and "MSA 687" or collectively, the "Property") by determining the existence and validity of two spoil deposit grants made by Sawyer's predecessors in interest in favor of the United States.

2.      This Court has subject matter jurisdiction under the Quiet Title Act, 28 U.S.C. § 2409a and 28 U.S.C. § 1346(f).

3.      The Property comprises approximately five (5) acres of land in Palm Beach County, Florida.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

1

## I.     <u>SUMMARY OF SAWYER'S OWNERSHIP</u>

5.     Sawyer and its predecessors in interest have held continuous record title to the Property since 1945 and 1969 respectively.

6.     Sawyer dereigns its title from the following deeds:

(a)     Warranty Deed from Jack Marquesse to Frank Sawyer dated April 1, 1969 and recorded on April 22, 1969 in Official Records Book 1717, Page 1335 of the Public Records of Palm Beach County, Florida; **Exhibit "A"**; and

(b)     Deed from Bessemer Properties Incorporated to Frank Sawyer dated July 5, 1945 and recorded on July 26, 1945 in Deed Book 724, Page 297 of the Public Records of Palm Beach County, Florida. **Exhibit "B".**

## II.     <u>SUMMARY OF THE UNITED STATES' CLAIMS</u>

7.     On June 7, 1937, George W. Harvey, as Trustee of the George W. Harvey Trust agreed to "furnish suitable areas [on MSA 687] for the deposit of dredged material in connection with the work and subsequent maintenance …" of the Intracoastal Waterway  ("MSA 687 Grant"). **Exhibit "C".**

8.     On April 4, 1938, Peter Brodt agreed to "furnish suitable areas [on MSA 686] for the deposit of dredged material in connection with the work and subsequent maintenance …" of the Intracoastal Waterway ("MSA 686 Grant"). **Exhibit "D".**

## III.     <u>MSA 687 DISCLAIMER</u>

9.     On June 29, 1981, the United States explicitly remised, released and forever quitclaimed all right, title and interest, claim and demand, which the United States had in MSA 687 under the MSA 687 Grant via Quitclaim Deed ("MSA 687 QCD"). **Exhibit "E".**

10.     Although executed and tendered with all of the formalities required under Florida law, the MSA 687 QCD was lost prior to its recordation in the Public Records of Palm Beach County, Florida.

11.     On June 29, 2015, the United States acknowledged that MSA 687 was conveyed to Sawyer in 1981 under the MSA 687 QCD. **Exhibit "F"**; *see also* ACOE Real Estate Map. **Exhibit "G".**

12.     Because the MSA 687 QCD was never recorded in the Public Records of Palm Beach County, Florida, the MSA 687 Grant remains as a cloud on the title to MSA 687.

13.     Sawyer has attempted, on several occasions, to have the United States re-execute and deliver the MSA 687 QCD or deliver a certified copy of it so it could be recorded in the Public Records of Palm Beach County, Florida, removing the cloud on the title to MSA 687.

14.     The United States refuses to honor Sawyer's requests and the cloud on MSA 687's title created by the MSA 687 Grant remains.

### IV.     ENVIRONMENTAL PERMITTING OF THE PROPERTY

15.     On December 5, 2013, the United States issued Permit Number SAJ-2007-03585 ("ACOE Permit 3585"), **Exhibit "H"**, to Sawyer which described the project to be constructed on MSA 686 and MSA 687 as:

> **Project Description**: The permittee proposes to fill approximately C.021 acres of mangrove wetlands (0.018 acres from the house pad and 0.03 acres from the boardwalk) and secondarily impact 0.08 acres of mangroves for the construction of a single family home and docking facility. The project consists of the following: 1) fill 0.018 acres of wetlands, 2) construct a 4-foot by 77-foot boardwalk through mangroves, 3) construct a 4-foot by 77-foot access walkway, and 4) construct a 6-foot by 20-foot terminal platform for mooring. No impacts are authorized to the remaining 2.16 acres of mangroves remaining onsite. The project area is approximately 4,92 acres in size and contains 2.17 acres of mangrove wetlands. The work described above is to be completed in accordance with the ten pages of drawings and attachments A through E affixed at the end of this permit instrument.

7143136-1

16.     Because MSA 686 and MSA 687 are largely comprised of environmentally sensitive areas, including wetlands, mangroves, habitat, and the like, ACOE Permit 3585 was brimming with conditions designed to protect and preserve those areas as well as numerous requirements for compensatory mitigation for losses due to the unavoidable environmental impacts.

17.     Special Condition No. 5 required that the "onsite compensatory mitigation areas be preserved in perpetuity in accordance with the Conservation Easement Special Condition of this permit."

18.     Special Condition No. 11, which addressed Special Condition No. 5, states that:

11.     **Conservation Easement**;     The Permittee shall preserve the areas referenced in the **Compensatory Mitigation** Special Condition which includes 2,16 acres of wetlands in perpetuity by recording a conservation easement within the boundaries and location annotated c-n the attached permit drawing 7 of 10, and in accordance with procedures outlined in Special Condition No. 1 of the attached Department of Environmental Protection (DEP) permit and the following conditions:

   a. Within 30 days, from the date of initiating the authorized work the permittee shall submit to the Corps a copy of the recorded conservation easement document with exhibits (including legal description and sketch).

   b  These natural preserve areas will not be disturbed by any dredging, filling, land clearing, agricultural activities, planting, or other construction work whatsoever except as required or authorized by this permit.   The Permittee agrees that the only future utilization of the preserved areas in question will be as a purely natural area.   Any deviation from the established conservation easement cannot be performed without a modification to this permit instrument.     The ability to modify or remove this conservation easement is neither implied nor guaranteed,     If the conservation easement is removed for any reason, the Permittee shall provide appropriate mitigation to compensate for functional wetland loss.

19.     The Conservation Easement, which encompasses MSA 686 and MSA 687, was executed on May 22, 2013 and recorded on June 11, 2013 in Official Records Book 26088 at Page 0861 of the Public Records of Palm Beach County, Florida.

Case 9:16-cv-80802-RLR   Document 1   Entered on FLSD Docket 05/20/2016   Page 5 of 10


20.     Special Condition No. 12 provides for the perpetual protection and preservation of the Property and requires that the environmentally sensitive areas be maintained in "their natural state", which would be accomplished by the Conservation Easement, amongst other things. Specifically, Special Condition No. 12 states:

12. **Perpetual Conservation**: The Permittee shall maintain the areas referenced in the **Compensatory Mitigation** Special Condition in their natural stare in perpetuity. The Permittee agrees that the only future utilization of these areas will be as a purely natural area and the following uses and/or activities will be prohibited except as required or authorized by this permit:

a. Construction or placing buildings,  roads, signs, billboards or other advertising, utilities or other structures On or above the ground.   Elevated boardwalks, hiking trails and camping areas will be permitted as long as they do not involve any of the other prohibited uses listed below;

b. Dumping or placing soil or other substance or material as landfill or dumping or placing of trash, waste or unsightly or offensive material.

c. Removal or destruction or trees, shrubs, or other vegetation.

d. Excavation, dredging or removal of loam, peat, gravel, soil, rock, or other material substance in such a manner as to affect the surface.

e. Surface use, except for purposes that permit the land or water area to remain predominantly in its natural condition.

f. Activities detrimental to drainage, flood control, water conservation, erosion control, soil conservation, or fish and wildlife habitat preservation.

g. Acts or uses detrimental to such retention of land or water areas,

h. Acts or uses detrimental to the preservation of the structural integrity or the physical appearance of sites or properties of historical, architectural, or cultural significance.

21.     Special Condition No. 13 also addressed the protection and preservation of the Property by requiring that only clean fill be used for the entire project, free from "trash, debris, automotive parts, asphalt, construction materials, concrete block with exposed reinforcement bars, and soils contaminated with any toxic substances, in toxic amounts in accordance with Section 307 of the Clean Water Act."

5

22.     On July 11, 2013, the State of Florida issued Environmental Resource Permit No. 50-0142802-004 ("ERP 004"), **Exhibit "I"**, to Sawyer which described the project to be constructed on MSA 686 and MSA 687 as:

**AUTHORIZATIONS**
Project Description

The permittee is authorized to (1) till 772.73 ft$^2$ (0.018 acres) of wetlands for the construction of a single family residence. (2) install a 4-ft by 302-ft (1.208 ft$^2$) boardwalk through mangroves, (3) install a 428 ft$^2$ dock consisting of a 4-foot by 77-foot (308 ft$^2$) access walkway and a 6-foot by 20-foot (120 ft$^2$) terminal platform at the terminal end of the boardwalk for mooring of a single vessel. (4) plant 50 mangroves for mitigation purposes, and (5) place 94.037 ft$^2$ (2.16 acres) of wetlands under a conservation easement for mitigation purposes, located in the Intracoastal Waterway, Class III Waters, Authorized activities are depicted on the attached exhibits.

To offset unavoidable impacts that will occur from these authorized activities, the permittee shall (1) place 94.037 ft$^2$ (2.16 acres) of onsite wetlands under a conservation easement. (2) plant 50 red mangroves (*Rhizophora mangle*) 1 gallon on 3 foot centers, (3) plant 20 sea oxeye 1 gallon on 3' centers. (4) plant 20 beach sunflower 1 gallon on 3' centers (a 0.05 ac. planting area within the 2.16 ac. conservation easement), and (5) remove 0.22 acres of exotic vegetation located within the conservation easement area.

Construction shall be conducted via the uplands and by shallow draft boats with a fully loaded draft of no more than 36-inches. The construction boats shall operate within waters of sufficient depth to preclude bottom scouring and prop dredging. All construction equipment tools and materials shall be transported to and from the site via barge and upland roadways and all equipment/tools and materials shall be stored on the barge and uplands. Staked and or weighted floating turbidity curtains, extending to within one foot from the bottom shall be utilized around the project area to ensure that any turbidity resulting from construction activities will be contained within the project boundaries. All waterbodies. including the adjacent submerged aquatic vegetation outside the specific limits of construction authorized by this permit shall be protected from erosion, siltation. sedimentation, and or scouring. The standard manatee conditions shall be adhered to during all in water work.

The project described above may be conducted only in accordance with the terms, conditions and attachments contained in this permit. The issuance of this permit does not infer, nor guarantee, nor imply that future permits or modifications will be granted by the Department.

6

23.     Like ACOE Permit 3585, ERP 004 emphasized the environmental sensitivity of MSA 686 and MSA 687 and required the same measures of protections and mitigation, including the Conservation Easement.

24.     ACOE Permit 3585 and ERP 004 are active and unexpired.

25.     Sawyer has been and continues to be damaged by the clouds on title to MSA 686 and MSA 687 created by the MSA 686 and MSA 687 Grants, which renders those properties unmarketable.

26.     Plaintiff has retained the firm of Berger Singerman to prosecute this action and is responsible to pay their attorneys' fees and costs.

## COUNT I – QUIET TITLE
### (MSA 687)

27.     This is an action to quiet title by determining the existence and validity of a spoil deposit grant.

28.     Plaintiff incorporates Paragraphs 1-25 as if set forth in full herein.

29.     The MSA 687 Grant ceased to legally exist when it was voluntarily terminated by the United States under the MSA 687 QCD.

30.     Notwithstanding, the MSA 687 Grant continues to exist of record  until an instrument is put of record evidencing termination.

31.     The United States has refused to provide such instrument and until it does and it is placed of record, Sawyer's title to MSA 687 is clouded by the MSA 687 Grant.

WHEREFORE, Plaintiff requests entry of a judgement quieting title to MSA 687 in Plaintiff and ordering Defendant to expeditiously produce an instrument appropriate for recordation terminating and cancelling the MSA 687 Grant and releasing MSA 687 from all

7143136-1

burdens and obligations created thereunder, along with other relief determined just and appropriate.

## COUNT II – QUIET TITLE
### (MSA 686)

32.     This is an action to quiet title by determining the existence and validity of a spoil deposit grant.

33.     Plaintiff incorporates Paragraphs 1-25 as if set forth in full herein.

34.     The United States Department of the Army Corps of Engineers was designated to act for the Secretary of the Army in issuing ACOE Permit 3585, thus the act of the District Engineer in doing so was an act of a federal official charged with the authority to bind the federal government.

35.     The Conservation Easement was an integral part of ACOE Permit 3585 and the United States specifically intended to require and did require and obtain the Conservation Easement as a condition precedent to the issuance of ACOE Permit 3585.

36.     By recognizing the environmental sensitivity of MSA 686 and the intentional and overt acts of requiring performance of the special conditions under ACOE Permit 3585 and accepting the benefit of the Conservation Easement, the United States committed an act wholly inconsistent with its future use and enjoyment of the MSA 686 Grant.

37.     Thus, the United States clearly and unequivocally evidenced the intent to abandon and did in fact abandon the MSA 686 Grant by issuing ACOE Permit 3585 because of the incompatibility and mutual exclusivity between the two.

38.     Moreover, the rights granted under the MSA 686 Grant can no longer be exercised due to futility and impossibility in that the limited right to deposit spoil was to be exercised only in areas that were suitable for disposal.

7143136-1

39.     Suitable is defined as having the qualities that are right, needed, or appropriate for something.

40.     Even if it was suitable at one time, MSA 686 is no longer suitable due to changed circumstances caused by: a) the changes in federal and state law regulating environmental and species protection; b) the requirements of permitting the complete annihilation of the environmentally sensitive areas within MSA 686; c) issuance of ACOE Permit 3585, ERP 004 and the conditions therein specifically designed to protect and preserve the environmentally sensitive areas within MSA 686; d) recordation of Conservation Easement; and e) diminished disposal area resulting from the MSA 687 QCD (reducing the total disposal area from approximately five (5) acres (MSA 686 and MSA 687 combined) of MSA 686 approximately one (1) acre).

41.     In fact, the Florida Inland Navigational District, the agency responsible for dredging the Waterway stated in their Long-Range Dredged Material Plan for MSA 686 was not suitable for deposit of soil because it was undersized, comprised mainly of mangroves and water, provided good habitat, and obtaining the requisite permits to deposit would be difficult. **Exhibit "J".**

42.     The changed circumstances make it futile, impractical, impossible and against the agency's own findings to deposit spoil under the MSA 686 Grant without: a) obtaining permits and authorizations from jurisdictional authorities; b) violating the terms and conditions of ACOE Permit 3585 and ERP 004; c) violating the terms and conditions of the Conservation Easement; d) polluting the adjacent privately owned property with the leeching and seeping toxins beyond the physical boundaries of MSA 686; and e) violating federal and state laws.

WHEREFORE, Plaintiff requests entry of a judgment quieting title to MSA 686 in Plaintiff and ordering Defendant to expeditiously produce an instrument appropriate for recordation terminating and cancelling the MSA 686 Grant and releasing MSA 686 from all burdens and obligations created thereunder, along with other relief determined just and appropriate.

### JURY TRIAL DEMAND

Plaintiff demands a jury trial as to all issues so triable.

Dated: May 20, 2016

Respectfully submitted,

BERGER SINGERMAN
Attorneys for Plaintiff 32nd Street, LLC as agent
for the Frank Sawyer Revocable Trust


/s/ Mitchell W. Berger
Mitchell W. Berger (FL Bar. No.  311340)
Email: mberger@bergersingerman.com
Zachary P. Hyman (FL Bar No. 98581)
Email: zhyman@bergersingerman.com
350 East Las Olas Blvd., Suite 1000
Fort Lauderdale, Florida 33301
Tel: (954) 525-9900
Fax: (954) 523-2872

7143136-1